UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DOROTHY BARRON,                    )
                                   )
          Plaintiff,               )
                                   )   No. 3:05-1071
     v.                            )   JUDGE ECHOLS
                                   )
HCA, INC., et al.,                 )
                                   )
          Defendants.              )

MEMORANDUM

Pending before the Court are the following dispositive motions: the Motion to Dismiss filed by Defendants HCA Health Services of Tennessee, Inc. d/b/a Centennial Medical Center, Parthenon Pavilion Psychiatric Hospital, and Juli Horton, M.D. (Docket Entry No. 35); the Motion to Dismiss On Behalf Of Defendant Saint Thomas Hospital (Docket Entry No. 39); the Motion to Dismiss On Behalf Of Defendant Thomas H. Ware (Docket Entry No. 51); the Motion to Dismiss (Docket Entry No. 55) and the Motion to Dismiss Under Rule 12(b)(1) and (6) (Docket Entry No. 56) filed by Defendant Cornerstone Health Care of McKenzie Inc., d/b/a/ Oak Manor Health Care Center; Defendant Dr. Shahana Huda's Motion to Dismiss (Docket Entry No. 61); and the Motion To Dismiss, Or Alternatively Motion For Judgment On The Pleadings, of Defendants Ronald Wilson, M.D., William Petrie, M.D., James Hart, M.D., Richard Fox, M.D., and Catherine Stallworth, M.D. (Docket Entry No. 65).[1]  Defendant Mark B. Reagan filed an Answer to the Complaint

_____

[1]The Court does not address the Motion To Dismiss Or Motion For Judgment On The Pleadings On Behalf Of David C. Heusinkveld, M.D. (Docket Entry No. 59).

1

(Docket Entry No. 29) in which he included a motion to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6), although he did not file a separate Motion with a Memorandum in support.[2]

   *Pro se* Plaintiff Dorothy Barron did not file any response in opposition to these motions, even though the Court granted her extensions of time within which to do so.   By Orders of the Magistrate Judge entered March 23, 2006 (Docket Entry No. 50), and June 8, 2006 (Docket Entry No. 70), the time for Plaintiff to file responses to the pending motions to dismiss was extended to June 20, 2006.  The Court specifically advised Plaintiff that failure to file responses could result in the dismissal of this action.[3] Although Plaintiff has not responded to the Motions, she filed an appeal of the June 8, 2006 Order with the United States Court of Appeals for the Sixth Circuit, which was dismissed.  (Docket Entry No. 75.)

### I. PLAINTIFF'S ALLEGATIONS

---

[2]Defendant "Dr. DeVender" (first name unknown) was served with a copy of the Summons and Complaint, but he did not answer or otherwise plead.   Because any federal claims Plaintiff alleges against "Dr. DeVender" fail for the same reasons stated in this Memorandum with regard to other named physicians, the Court will *sua sponte* dismiss with prejudice any federal claims made against "Dr. DeVender."
   The final named Defendant, identified only as "Dr. Randall," was not served with the Summons and Complaint.  The Court will dismiss all claims against him for lack of proper service.

[3]Plaintiff's request to stay proceedings was denied, and her request to amend the Complaint was denied because the proposed amendment was not provided to the Magistrate Judge for review.

Plaintiff filed this action *pro se* and *in forma pauperis* asserting claims against four health care facilities, ten physicians, and two lawyers alleging they committed acts in violation of federal law and were negligent in the management of her medical care. Plaintiff's allegations of fact span ten pages of the Complaint and will be summarized here.

Plaintiff, a 52-year old African American female, alleges that she uses a wheelchair because of disabling medical conditions, she is allergic to some metals, and she requires hydrotherapy (whirlpool and heated pool) for a back condition. She alleges she presented to Saint Thomas Hospital's emergency room on October 14, 2004, and she was admitted shortly thereafter. Dr. David Heusinkveld was her primary physician. Due to her physical condition and lack of assistance at home, Dr. Heusinkveld advised Plaintiff not to return home but to consider a temporary alternative placement where she could receive hydrotherapy. Saint Thomas Hospital did not offer hydrotherapy. Plaintiff and Dr. Heusinkveld made unsuccessful efforts to find such a placement.

Plaintiff remained at Saint Thomas Hospital five days between October 14 and 19, 2004. Over the weekend, Dr. Randall substituted for Dr. Heusinkveld, and by Monday, Dr. Randall had taken over Plaintiff's care and ordered a psychiatric evaluation of Plaintiff. Dr. Petrie, a psychiatrist, informed Plaintiff that she would be placed in the Parthenon Pavilion Psychiatric Hospital, and Plaintiff was involuntarily transferred there on October 19, 2004. Plaintiff denies that she had psychiatric problems. Plaintiff

3

implicates Dr. Hart in these events, but she does not explain how he was involved.

Plaintiff further alleges that the staff at Parthenon ignored her medical conditions, refused to provide her with proper treatment for her conditions, exacerbated her conditions, caused her to suffer new injuries because of their negligence, and fraudulently billed Medicare for psychiatric medications she did not receive or take. She alleges Dr. Petrie and Dr. Huda continued to approach her at Parthenon even though Plaintiff did not want or require their psychiatric services. She alleges Dr. Huda entered in Plaintiff's medical chart, "she disrespected us." Plaintiff further asserts that, for five days, Dr. Fox refused to order an x-ray of her swollen leg and that, when her leg was eventually x-rayed, it showed she was suffering from deep vein thrombosis ("DVT"). Plaintiff alleges she was deprived of drinking water for five days, and Dr. Petrie falsified information in her medical chart and acknowledged to her that she should not have been admitted to Parthenon.

On a date not specified in the Complaint, Plaintiff was transferred from Parthenon to Centennial Medical Center where her attending physician was Dr. Juli Horton. Plaintiff alleges Dr. Horton refused to treat Plaintiff's deep vein thrombosis and the swelling in her leg. Plaintiff alleges that Centennial also fraudulently billed Medicare for psychiatric drugs she never received. Plaintiff was first told that Centennial did not have hydrotherapy, but when Plaintiff discovered this deception, staff

4

explained that hydrotherapy was for outpatients only. A concession was then made so that Plaintiff would receive "heated pool" hydrotherapy. These sessions were first offered in the afternoons, which Plaintiff liked because the morning hours were physically difficult for her. The physical therapist then changed the schedule to mornings against Plaintiff's wishes, and Plaintiff did not receive any hydrotherapy on the physical therapist's days off or on weekends. Plaintiff alleges she was denied whirlpool hydrotherapy at Centennial, which was the most critical component of her treatment. A meeting was held concerning Plaintiff's need for hydrotherapy, which was attended by Dr. Horton and a member of the risk management team. The day after the meeting, Dr. Horton allegedly stated to Plaintiff, "You just love dictating your medical treatment to others."

According to Plaintiff, after approximately a week at Centennial, Dr. Horton informed Plaintiff she could go home without consideration of her condition. Plaintiff contends Dr. Horton and the other staff at Centennial did not want to keep her there and engaged in a scheme to have her discharged even though Centennial was able to provide her with the treatment she required. She alleges Dr. Stallworth conducted a cursory examination of her, ignored her complaints, and blatantly ignored her need for hydrotherapy. Plaintiff asserts Dr. Horton then discontinued the order for hydrotherapy, which allowed the discharge of Plaintiff to virtually any other type of facility. Plaintiff alleges Dr. Horton and Dr. Wilson wrote false affidavits stating Plaintiff was

5

mentally incompetent and Centennial initiated proceedings in state court to have her declared mentally incompetent. She asserts that a conservator was appointed and that, by court order, she was removed from Centennial and transferred to Oak Manor on December 15, 2004.[4]

Plaintiff contends that, by this point, her health had deteriorated so much that she could no longer move on her own, she had difficulty breathing, and her bowels were weak. She asserts Oak Manor is a nursing home that could not meet her need for hydrotherapy. She alleges she was treated negligently at Oak Manor and she was drugged to the point of unconsciousness.

Plaintiff asserts that Defendant Reagan was her court-appointed attorney ad litem and that Defendant Ware was her court-appointed conservator. She alleges these defendants refused to assist her; specifically, Reagan refused to file appeals on her behalf and Ware, having fiduciary powers, denied her financial funds to purchase disposable sanitary supplies while she was at Oak Manor.

Plaintiff specifically asserts claims against Saint Thomas, Parthenon, Centennial and Oak Manor under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which prohibits disability discrimination in any program or activity receiving federal

---

[4]It appears Plaintiff's transfer was accomplished through a temporary conservatorship by Order of the Seventh Circuit Court for Davidson County, Tennessee, Probate Division, Case No. 04P-1987. That court appointed Defendant Ware to serve as Plaintiff's Temporary Conservator for the person of Plaintiff, and Defendant Reagan was appointed guardian *ad litem*.

6

financial assistance.   She asserts claims against Parthenon, Centennial and Oak Manor under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., for allegedly billing Medicare for medications she contends she did not receive.   She makes a claim against Centennial under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.[5] She brings claims against Saint Thomas and Centennial under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, also known as the "patient anti-dumping statute." She asserts claims under the First and Fourteenth Amendments to the United States Constitution against Saint Thomas, Parthenon, Centennial, Oak Manor, Reagan and Ware.

Plaintiff also alleges negligence against the four hospital facilities and Defendants Reagan and Ware.   Plaintiff cites Tenn. Code Ann. § 28-3-104, but that statute sets out a one-year statute of limitations for personal injury actions.   It does not provide a substantive basis for any cause of action.   Given the context of Plaintiff's Complaint and her *pro se* status, however, the Court liberally construes the Complaint as asserting state law claims for medical malpractice under Tenn. Code Ann. §§ 29-26-115 *et seq*. and for attorney malpractice.

Plaintiff also cites Tenn. Code Ann. § 34-13-101, which was transferred to Tenn. Code Ann. § 34-3-101 in 2001.   This statute provides for an action to appoint a conservator.   The Court

_____

[5]Title VI provides that "No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

7

construes this statutory reference in the Complaint to refer to the roles played by attorney Defendants Reagan and Ware. Liberally construed, Plaintiff appears to assert state-law claims for breach of fiduciary duty against these two Defendants.

Plaintiff does not specifically state whether her claims under the Rehabilitation Act, the False Claims Act, Title VI, the EMTALA, and the First and Fourteenth Amendments are also asserted against the individual physician Defendants. A liberal construction of the Complaint leads to the conclusion that the federal claims may also be asserted against the individual Defendants and that Plaintiff asserts medical malpractice claims against each of the named physician Defendants.

Plaintiff seeks millions in compensatory and punitive damages, various forms of injunctive relief, and suspension of the medical and law licenses of the named individual Defendants. By Order entered March 3, 2006 (Docket Entry No. 58), Plaintiff's two motions for emergency injunctive relief were denied.

## II. <u>STANDARD OF REVIEW</u>

In evaluating the Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. <u>See</u> <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 11-12 (6th Cir. 1987). The Court should not dismiss the Complaint unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support of her claims which would entitle her to relief. <u>Id</u>. at 12. A Complaint must contain either direct or inferential

8

allegations respecting all of the material elements of a claim to sustain a recovery under some viable legal theory.  <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988).

### III. <u>ANALYSIS</u>

Many of the Defendants raise similar legal arguments.  Rather than discuss each pending motion to dismiss, the Court will address the common issues raised by the Defendants in the various motions.

### A.  Statute of limitations

A threshold argument for dismissal is that Plaintiff's federal claims are barred by the applicable statute of limitations. Defendants contend the one-year statute of limitations for personal injury actions set out in Tenn. Code Ann. § 28-3-104 applies to all of Plaintiff's federal claims except the EMTALA claim.  Defendants assert Plaintiff's Complaint was filed on December 21, 2005, yet most, if not all, of the alleged wrongdoing occurred over a year prior to that date.

The Court agrees that the one-year statute of limitations set out in § 28-3-104 applies to the Rehabilitation Act claim brought under 29 U.S.C. § 794, <u>see</u> <u>Southerland v. Hardway Mgmt., Inc.</u>, 41 F.3d 250, 254-255 (6th Cir. 1994); the Title VI claim, <u>see</u> <u>Wade v. Knoxville Utilities Bd.</u>, 259 F.3d 452, 460 (6th Cir. 2001), and the civil rights claims for violations of the First and Fourteenth Amendments, <u>see</u> <u>Wolfe v. Perry</u>, 412 F.3d 707, 713-714 (6th Cir. 2005).  Although Plaintiff does not specifically state in her Complaint that she brings claims pursuant to 42 U.S.C. § 1983, the Court must analyze her claims under § 1983 because the statute

9

serves as a procedural mechanism for a plaintiff to obtain damages for constitutional violations.

The Court does not agree with Defendants that the one-year statute of limitations applies to Plaintiff's claims under the False Claims Act. Except for retaliation claims brought under the False Claims Act, the six-year statute of limitations provided in 31 U.S.C. § 3731(b)(1) applies to civil claims brought for violations of the False Claims Act. See Graham County Soil & Water Conservation Dist. v. United States, 545 U.S. 409, 125 S.Ct. 2444, 2448-2449 (2005).

As to the federal claims to which the one-year statute of limitations applies (Rehabilitation Act, Title VI, and constitutional claims under § 1983), the question becomes whether Plaintiff's Complaint was timely filed. Plaintiff was admitted to Saint Thomas Hospital on October 14, 2004, transferred to Parthenon on October 19, 2004, and transferred at some unspecified later time to Centennial, from which she was discharged to Oak Manor on December 15, 2004. Plaintiff's Complaint appears to be untimely filed because it bears the file-stamp date of December 21, 2005, more than one year after the events at issue.

Plaintiff filed her Complaint, however, as an *in forma pauperis* ("IFP") litigant under the provisions of 28 U.S.C. § 1915. The Complaint and Application to Proceed *In Forma Pauperis* were received by the Court on October 20, 2005. Under Sixth Circuit law, the Complaint is considered timely filed on the day of its receipt by the Clerk, even if, as in this case, the IFP application

10

was approved at a later date and the Complaint was formally filed after the Court granted the IFP application. Dean v. Veterans Admin. Reg'l Office, 943 F.2d 667, 671 (6th Cir. 1991), *vacated and remanded on other grounds*, 503 U.S. 902 (1992); Scott v. Evans, 116 Fed.Appx. 699, 701 (6 [th] Cir. 2004) (citing Dean for same proposition). Thus, for purposes of the statute of limitations, Plaintiff's Complaint was filed on October 20, 2005. All federal claims arising from events occurring prior to October 20, 2004, are time-barred. All federal claims arising from events occurring on or after October 20, 2004, are timely.

**B.  No federal claims are stated**

Defendants next contend that Plaintiff does not allege sufficient facts to state federal claims against them.

*1.  Rehabilitation Act and Title VI*

With regard to the timely claims under the Rehabilitation Act and Title VI, the Court agrees that the Complaint is devoid of allegations that any of the Defendants discriminated against Plaintiff because of her disability or her race. Plaintiff alleges only that she is an African American, that she suffers from disabling medical conditions, and that a course of events occurred regarding her medical care. Even taking all of the allegations as true, Plaintiff has not alleged facts showing that Defendants intentionally discriminated against her based on her disability in violation of § 794 or intentionally discriminated against her based on her race in violation of Title VI.

11

*2. First and Fourteenth Amendment rights*

Plaintiff also fails to state a claim for the violation of her First and Fourteenth Amendment rights. Under § 1983, Plaintiff must show the Defendants acted under color of state law; in other words, the Defendants exercised power possessed by virtue of state law and made possible only because Defendants were clothed with the authority of state law. <u>Dean v. Byerley</u>, 354 F.3d 540, 552 (6th Cir. 2004). The actions of private individuals may be committed under color of state law when "'significant state involvement attaches to the action.'" <u>Simescu v. Emmet County Dept. of Social Serv.</u>, 942 F.2d 372, 374 (6th Cir. 1991). "The required nexus between the State and the private party may be shown where the State has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" <u>Id.</u> (quoted case omitted).

Plaintiff has not alleged that Defendants Saint Thomas Hospital, Dr. Fox, Dr. Hart, Dr. Stallworth, or Oak Manor had any involvement with the State. Plaintiff does allege that Parthenon, Centennial, Dr. Randall, Dr. Petrie, Dr. Huda, Dr. Horton, Dr. Wilson, Ware and Reagan were involved in the temporary conservatorship proceeding concerning Plaintiff. Defendant Ware was appointed by the court to serve as temporary conservator of the person of Plaintiff and Reagan was appointed to serve as guardian *ad litem*. Even their actions in these court-appointed roles, however, were not committed under the color of state law. <u>See</u>

12

<u>McClear v. Donaldson</u>, 812 F.2d 1407, 1987 WL 36589 at *1 (6th Cir. 1987)(unpublished) (holding court-appointed guardian *ad litem* and conservator did not act under color of state law and could not be subjected to suit under § 1983); <u>Pruitt v. Ladon's Guardianship Serv.</u>, 2005 WL 1345286 at *2 (E.D. Mich. May 24, 2005) (noting well-established law that court-appointed guardian *ad litem* or conservator does not act under color of state law for purposes of § 1983 liability, *citing e.g.* <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1289, 1292-1293 (11th Cir. 2005)). If Ware and Reagan did not act under color of state law, then certainly the remaining private Defendants did not. Plaintiff fails to state a § 1983 claim against the Defendants for violation of her constitutional rights.

  *3. False Claims Act*

  Plaintiff's claims under the False Claims Act also must be dismissed for failure to state a claim. A private individual may bring a *qui tam* action in the Government's name for violations of the False Claims Act. <u>See</u> <u>Vermont Agency of Natural Resources v. United States</u>, 529 U.S. 765, 769-770 (2000). However, a private plaintiff pursuing a *qui tam* action is required to deliver a copy of the Complaint and any supporting evidence to the Government so that the Government can decide if it will intervene in the action. <u>Id</u>. Only if the Government declines to intervene does the private plaintiff have standing and the exclusive right to conduct the action. <u>Id</u>. Plaintiff has not shown that she complied with this requirement.

13

Additionally, a private plaintiff pursuing a *qui tam* action must allege fraud with particularity to comply with Federal Rule of Civil Procedure 9(b). Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 876-777 (6th Cir. 2006). The allegations of the Complaint must contain "'the time, place, and content of the alleged misrepresentations on which [plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Id. at 877 (quoting Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir. 2003)). Plaintiff's only allegation is that Parthenon and Centennial billed Medicare for psychiatric drugs Plaintiff alleges she did not receive. This allegation falls far short of satisfying the particularity requirement. Plaintiff fails to state a claim under the False Claims Act against any Defendant.

   *4.  EMTALA claim*

Plaintiff alleges that Saint Thomas and Centennial violated the EMTALA. Under this statute, a participating hospital must screen any individual who comes to its emergency room seeking treatment in order to determine whether the individual has an emergency medical condition. 42 U.S.C. § 1395dd(a). If such a condition exists, the hospital must provide stabilizing treatment before discharging or transferring the patient to another facility. 42 U.S.C. § 1395dd(b). A violation arises if a hospital fails to adequately screen a patient, or discharges or transfers a patient without first stabilizing her emergency medical condition. See Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002) (en banc).

Plaintiff's allegations against Saint Thomas and Centennial do not state a claim for relief under the EMTALA. First, Plaintiff has not alleged that she suffered from an emergency medical condition that required stabilization. See 42 U.S.C. § 1395dd(e)(1)(A); Thornton v. Southwest Detroit Hosp., 895 F.2d 1131, 1134 (6th Cir. 1990). Even if she did suffer from such a condition, Plaintiff alleges she presented to Saint Thomas Hospital's emergency room and was admitted shortly thereafter. The EMTALA does not apply to the actions of Saint Thomas in this case because the hospital admitted her and did not turn her away. See id.; Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 268-269, 271-272 (6th Cir. 1990).

Plaintiff does not, and cannot, allege that she presented to Centennial's emergency room. She was transferred from Parthenon and admitted to Centennial. Thus, the EMTALA does not apply to Centennial's admission of Plaintiff to the hospital. See Harry, 291 F.3d at 770. Finally, the EMTALA "was not enacted to establish a federal medical malpractice cause of action." Bryant v. Adventist Health Sys./West, 289 F.3d 1162, 1166 (9th Cir. 2002); Cleland, 917 F.2d at 271.

Plaintiff has not stated a federal claim against any Defendant. Therefore, Defendants' Motions to Dismiss the federal claims brought against them will be GRANTED.

## C. State law claims

Plaintiff's remaining claims against the Defendants sound in negligence, medical and legal malpractice, and breach of fiduciary

15

duty. The Complaint does not establish complete diversity of the parties, so the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. In light of the dismissal of Plaintiff's federal claims, the Court may address Plaintiff's state-law claims only if the Court exercises supplemental jurisdiction under 28 U.S.C. § 1367. That statute provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection(a) if –
>
> . . . .
>
> > (3) the district court has dismissed all claims over which it has original jurisdiction[.]

The Court has broad discretion to decide whether to retain jurisdiction over state-law claims after dismissing the federal claims asserted in an action. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-52 (1988); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). In making this decision, the Court must consider the provisions of § 1367(c) and the factors outlined in Cohill, 484 U.S. at 350-51, and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Such factors include judicial economy, convenience, fairness, and comity. Cohill, 484 U.S. at 350. Although not mandatory or absolute, the general rule favors declination of the exercise of jurisdiction over pendent state law claims when all federal claims are eliminated from a case before trial. Musson, 89 F.3d at 1254-1255.

Having carefully considered the Plaintiff's *pro se* Complaint in light of fairness, comity, judicial economy, and convenience,

16

the Court concludes Plaintiff's state-law tort claims should be dismissed without prejudice. Very little, if any, pre-trial discovery has occurred, and for that reason the parties will not be prejudiced by dismissal of the state-law claims at this time. Further, the Court need not reach Defendant Oak Manor's contention that Plaintiff's negligence claims against it are barred by an arbitration agreement. Finally, any claims Plaintiff may have concerning the professional medical and law licenses of named Defendants must be pursued before the appropriate state licensing boards.

## IV. CONCLUSION

For all of the reasons stated, the Court will grant the Defendants' Motions to Dismiss with prejudice the federal claims brought against them for failure to state a claim under Rule 12(b)(6). The Court does not have diversity jurisdiction to consider Plaintiff's state-law claims, and the Court declines to exercise supplemental jurisdiction over the state-law claims. The Court will dismiss Plaintiff's state-law tort claims without prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

17